IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| AJAY OJHA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:12-cv-00009-ESH |
| ) | |
| ALBERIC AGODIO, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS COUNTS I AND II PURSUANT TO RULE 12(b)(6)**

Plaintiff Ajay Ojha, by his Attorney Patrice A. Sulton, respectfully files this memorandum in opposition to Defendants' motion to dismiss Plaintiff's First and Second Causes of Action.

**FACTS**

Plaintiff Ajay Ojha is an adult resident of the District of Columbia. Complaint ¶ 3. Defendant Alberic Agodio is an adult resident of the Commonwealth of Virginia. He is the founder, incorporator, president, chief executive officer, and/or managing partner of Maryland Defendants AORE Investments, Inc., AORE Real Estate Investment Fund I, L.P., and AORE Group I, LLC. These are closely held companies, with Agodio being in complete control of the operations of his companies. He is an agent and representative of his companies, and authorized to enter his companies into binding contracts with Ojha and third parties. Complaint ¶ 4.

1

While Ojha was in the District of Columbia, Ojha was contacted by Agodio. Complaint ¶ 10; Answer, p. 3.  In or about March of 2011, Agodio asked Ojha to give to Agodio's companies (the Defendant companies named herein) $100,000 so that Agodio's companies could purchase and re-sell distressed residential real estate in Baltimore, Maryland.

To induce Ojha to give Agodio's companies $100,000, in or about March of 2011, Agodio told Ojha that Ojha would not lose any money, that Agodio's companies *and* Agodio personally would be responsible to repay Ojha $100,000, and that the $100,000 would be repaid within a few months. Complaint ¶¶ 11 and 13.

To further induce Ojha to give Agodio's companies $100,000, Agodio told Ojha that Agodio's companies would pay to Ojha 29% of the profits Agodio's companies made on the re-sale of distressed residential properties in Baltimore, Maryland. Complaint ¶ 12.

In or about March of 2011, Ojha informed Agodio that he could only lend the $100,000 if he sold existing shares of stock, and that he would thereby incur capital gains tax in the amount of $15,000. Complaint ¶ 14.  To further induce Ojha to give Agodio's companies $100,000, Agodio told Ojha that Agodio and his companies would pay Ojha an additional $15,000 to reimburse Ojha for any capital gains taxes Ojha might incur, with said payment being made within a few months. Complaint ¶ 15.  Ojha gave to Agodio's companies $100,000.  Complaint ¶ 16.

After Ojha wired the $100,000 to Agodio's companies' bank account, Agodio told Ojha to give to law firm Linowes and Blocher, LLP $10,000, so that Agodio's companies could have a Private Placement Memorandum drafted. Ojha understood this was necessary in order to ensure the timely payment of the $115,000 now due Ojha, and payment of 29% of the profits Agodio

promised would be paid to Ojha. Complaint ¶ 17.  To induce Ojha to pay $10,000 to the law firm, Agodio told Ojha that Agodio's companies would repay Ojha the $10,000 within a few months and Agodio too would be personally responsible for repayment of this $10,000 sum to Ojha. Complaint ¶ 18.  Ojha gave to Linowes and Blocher, LLP $ 10,000. Complaint ¶ 19.

In or about May of 2011, Agodio asked Ojha to permit Agodio and his companies to make charges to Ojha's credit card, so that Agodio and his companies could make purchases related to Agodio's companies' real estate business. Complaint ¶ 20.  To induce Ojha to permit the use of his credit card, Agodio told Ojha that Agodio and his companies would repay Ojha for any and all charges, interest, and fees resulting from Agodio's and his companies' use of Ojha's credit card. Complaint ¶ 21.  From in or about May through October of 2011, Ojha permitted Agodio and his companies to make charges to Ojha's credit card. Agodio repaid some of the charges.  However, Agodio and his companies have failed and refused to repay nearly $5,300 in charges, interest, and fees charged to Ojha's credit card by Agodio and his companies. Complaint ¶ 22.

The time passed when Agodio and his companies were to pay Ojha on each of the debts described herein. Complaint ¶ 23.  In October of 2011, Ojha demanded that Agodio and his companies repay Ojha all sums then due and owing, i.e., $130,288. Complaint ¶ 24.   Agodio told Ojha that neither he nor his companies had the money to make the payments.  Agodio requested additional time to pay the debts. Complaint ¶ 25.  Agodio then offered that he and his companies would both be responsible to pay Ojha $155,288 if Ojha would allow the $130,288 debts then owing and due to be paid in five installments over one year's time. Complaint ¶ 26.

Neither Agodio nor his companies have made any of the promised payments to Ojha. Complaint ¶ 27.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must provide "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must give the defendants fair notice of what the claims are and the grounds on which they rest, and allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The court must assume all the well-pleaded allegations in the complaint are true and give the plaintiff the benefit of all reasonable inferences. The complaint "must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. U.S.*, 617 F.2d 605, 608 (D.C. Cir. 1979).

The Rules do not require a claimant to set out in detail the facts upon which he bases his claim. *See Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003). Rather, the simplified notice pleading standard relies in part on liberal discovery rules to define disputed facts and issues. *Id*. The appropriate inquiry at this stage is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Id*.

## ARGUMENT

It is well settled law that when jurisdiction is based on diversity, the Court must apply the conflicts of law rules of the State in which it sits. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S.

487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, this Court applies the District of Columbia's law. *See YWCA v. Allstate Ins. Co.*, 275 F.3d 1145, 1150 (D.C.Cir.2002).

### I.   Defendant Alberic Agodio Is Precluded From Filing A 12(B)(6) Motion.

On January 25, 2012, defendants submitted to the Court a document entitled "Defendant's Motion to Dismiss the Complaint," which the Clerk declined to file without leave of Court because it was unsigned and otherwise failed to comply with Local Civil Rule 5.1.  On January 31, 2012, this honorable court ordered that the Clerk of Court file the document as an Answer on behalf of defendant Agodio.  On March 20, 2012, all defendants filed the instant motion to dismiss counts I and II, pursuant to Federal Rule of Civil Procedure 12(b)(6).

A motion asserting a defense under Rule 12(b) must be made before pleading, if a responsive pleading is allowed.  Because defendant Agodio already filed an Answer, he is precluded from now filing a motion to dismiss pursuant to Rule 12(b)(6).

### II.   Plaintiff States A Cause Of Action For Breach Of Contract.

Plaintiff alleges that there was an offer and acceptance, and that he performed his part of the bargain. Plaintiff's Complaint sets forth facts showing that in reliance on his agreement with Defendants, he gave Defendants over $130,000 as his obligation.  The agreement is subject of dispute, with Plaintiff alleging Defendants breached the contract by failing to repay the money.

Defendant Agodio admits that he came into the District of Columbia and made the offer to Plaintiff.  Answer, p. 3.  Defendant Agodio states that there was an agreement.  Answer, p. 4. And Defendant Agodio admits that he owes the money to Plaintiff.  Answer, p. 5.

### A. Plaintiff's claim against Defendant Alberic Agodio for breach of contract is not barred by the Statute of Frauds.

Defendants argue that the statute of frauds is a bar to Plaintiff's claims. Plaintiff disagrees. Courts repeatedly and consistently have held that there are exceptions to the statute of frauds and that it is not a bar (1) when defendants' own fraud is responsible for the non-existence of the written agreement, (2) when part performance warrants enforcement of the contract, or (3) when the defendants have waived the defense by admitting the existence of the contract. *See Railan v. Katyal*, 766 A.2d 998, 1007 (D.C. 2001); *see also Gharib v. Wolf*, 518 F.Supp.2d 50, 54 (D.D.C.2007)

In this case, Plaintiff alleges fraud by the defendants in the second cause of action. Complaint ¶¶ 43-49. Plaintiff's Complaint also contains numerous allegations that he performed and that this performance warrants enforcement of the contracts. Complaint ¶¶ 16 and 19. Defendants admit that there is a contract, and therefore have waived the defense of statute of frauds. At page 5 of his "Answer" to Plaintiff's Complaint, Defendant Agodio admits that there is a contract and that he is indebted to Plaintiff, stating: "Agodio and his companies do acknowledge the debt and therefore take the full responsibility of repaying the debt as soon as they are able to arrive at a reasonable agreement with Ojha and his counsel."

"[The D.C.] statute of frauds does not require that the contract itself be in writing" (citing *Farrow v. Cahill*, 663 F.2d 201, 209-10 (D.C.Cir.1980)); *see also Farrow*, 663 F.2d at 209 (noting that the statute of frauds may be satisfied by a signed letter attempting to repudiate an oral contract and that the "memorandum or note" does not need to be "made by the parties as an expression of the contract or signed with the intention of assenting to the contract's terms in

order to satisfy the Statute" … ); Restatement (Second) of Contracts § 133 (noting that "the Statute may be satisfied by a signed writing not made as a memorandum of a contract").

        B.     <u>Plaintiff's claim against Defendants AORE Investments, Inc., AORE Real Estate Investment Fund I, LP, and AORE Group I, LLC for breach of contract is ripe.</u>

Defendants argue that the monies borrowed from Ojha may not yet be due and owing. Plaintiff disagrees. Repayment was due a few months after March of 2011. Complaint ¶13. The agreed upon time period lapsed prior to the filing of the Complaint. In October of 2011, Ojha demanded repayment and Defendants agree that a debt was then due. Complaint ¶¶24-26; Answer, p. 5. The parties then negotiated a repayment schedule, which the defendants ignored. Complaint ¶¶26-27.

      **III.**    **Plaintiff States A Cause of Action for Fraud.**

Plaintiff's fraud claim is subject to Federal Rule of Civil Procedure Rule 9(b)'s pleading requirements. Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A court should "hesitate" to dismiss a complaint under Rule 9(b) when the court is satisfied that the defendants have been made aware of the particular circumstances for which they will have to prepare a defense at trial and that the plaintiff has substantial pre-discovery evidence of those facts. *U.S. ex rel. Barrett v. Columbia/HCA Healthcare Corp.,* 251 F. Supp. 2d 28, 34 (D.D.C. 2003).

Under District of Columbia law, a cause of action alleging fraud must contain the following allegations: (1) a false representation, (2) concerning a material fact, (3) made with

knowledge of its falsity, (4) with the intent to deceive, and (5) upon which reliance is placed. *Acosta Orellana v. CropLife Int'l.*, 711 F. Supp. 2d 81, 96 (D.D.C. 2010).  In *Djourabchi v. Self*, 571 F.Supp.2d 41,48-50 (D.D.C. 2008), the court explained:

> District of Columbia courts have demonstrated willingness to expand the meanings of these elements when appropriate situations are presented.  For example, the requirement of knowledge of falsity may be met by a showing that the statements were "recklessly and positively made without knowledge of (their) truth." … "[A] representation is material if it reasonably influences a plaintiff to take an action he or she may have refrained from taking if aware of the actual facts." … Intent to deceive can be implied from the fact that the defendant made an affirmative statement that he knew to be false. "An intent to deceive may be inferred from 'reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation'") (citations omitted).

Plaintiff's Complaint contains all of the required fraud allegations. Defendants told Plaintiff that they would use Plaintiff's money to purchase and re-sell distressed real estate, and whether or not Defendants made any money, they would repay Plaintiff within a few months of March 2011.  Complaint  ¶¶ 11-13.  These were material facts.  In October 2011, Defendants then promised to begin repayment in installments.  Complaint  ¶ 26.  None of these installment payments was made. Complaint  ¶ 27.

Defendants take issue with the pleading of elements (3) and (4).  They argue that the Complaint must specify that, at the time defendants made a promise to repay Plaintiff, defendants intended to not repay him.  This is precisely what the Complaint alleges.  It is clear in the initial pleading that Plaintiff contends the defendants had no intention of upholding the promise to timely repay him when they solicited his funds.  Complaint ¶¶45-47.  Nor did defendants intend to pay him 29% of the profits earned by the companies.  This is further evidenced by the fact that defendants have not made any payment to date.  Complaint ¶27. Plaintiff alleges these representations of material fact were made with knowledge of their falsity

8

and with the intent to deceive Plaintiff. Complaint ¶¶ 44-48. Plaintiff also alleges he relied upon the false representation of material fact made by Defendants, giving to Defendants over $130,000. Complaint ¶ 23.

## RELIEF REQUESTED

Mr. Ojha respectfully requests that the Court deny Defendants' motion to dismiss. Should the Court find that Plaintiff's Complaint is deficient, then he respectfully requests permission to file an Amended Complaint.

Respectfully submitted this 3rd day of April, 2012.

                                          **s/PATRICE A. SULTON**
                                          Patrice A. Sulton, Esq., Bar No. 990606
                                          Attorney for Plaintiff Ajay Ojha
                                          Sulton Law Offices, PLLC
                                          601 Pennsylvania Avenue, NW
                                          Suite 900 South
                                          Washington, DC 20004
                                          Telephone: (202) 681-8783
                                          Email: patrice.sulton@sultonlaw.com

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on April 3, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

George R.A. Doumar
Doumar Martin, PLLC
2000 N. 14th Street
Suite 210
Arlington, VA 22201
Tel: (703) 243-3737
Fax: (703) 524-7610
gdoumar@doumarmartin.com
Attorney for all defendants

**s/PATRICE A. SULTON**
Patrice A. Sulton, Esq. (DC Bar No. 990606)
Attorney for Plaintiff Ajay Ojha
Sulton Law Offices, PLLC
601 Pennsylvania Avenue, NW
Suite 900 South
Washington, DC 20004
Telephone: (202) 681-8783
Email: patrice.sulton@sultonlaw.com
